UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. _____ **00-6169**

STREET INFORMATION SYSTEMS,
INC.

Plaintiff,

vs.

CITY OF DEERFIELD BEACH,

Defendant.

_____/

## COMPLAINT

Plaintiff Street Information Systems, Inc. ("SIS"), for its complaint against the

City of Deerfield Beach ("Deerfield Beach" or the "City"), alleges:

1.     This is an action for declaratory and injunctive relief, together with

reasonable attorney's fees and such other relief as the Court may deem appropriate. The action is

based upon the facial unconstitutionality of a sign ordinance enacted by Defendant which

impermissibly infringed upon the right of SIS and its advertisers to free speech as guaranteed by

the First and Fourteenth Amendments to the United States Constitution.

### Jurisdiction and Venue

2.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and

1343(a)(3) and (4) because the action arises under the First and Fourteenth Amendments to the

United States Constitution and under 42 U.S.C. § 1983.

3.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because Plaintiff's claim arises in this district and Defendant is a municipal corporation located within this district.

Parties

4.     Plaintiff SIS is a Florida corporation with its principal place of business in Broward County, Florida.

5.     Defendant Deerfield Beach is a Florida municipality located in Broward County, duly organized and existing under the laws of the State of Florida.

Allegations

6.     Outdoor advertising is a cost-effective means of displaying commercial, political and public service messages to a wide audience. Many businesses, not-for-profit institutions, and other persons or groups rely on outdoor advertising as the farthest reaching, most appropriate, least expensive and perhaps only means of communicating the message displayed.

7.     SIS is developing a number of outdoor advertising signs, including sign faces, sign structures, and appurtenant equipment in various locations throughout the United States, including Broward County, Florida.

8.     In many instances, SIS is a ground lease tenant. The ground leases authorize SIS to erect and maintain outdoor advertising signs containing commercial and noncommercial messages relating to products, services and activities conducted on property other than the property where the sign is located (i.e., off-premise signs).

9.    SIS signs are available to local and national advertisers for commercial and noncommercial messages similar to newspaper and broadcast advertising. The users and messages change periodically.

### Deerfield Beach and Its Sign Ordinance

10.    SIS leases certain real property located within Deerfield Beach. The leases grant SIS the right to erect and maintain outdoor advertising signs on the leased premises.

11.    On or about January 5, 1999, the City adopted a comprehensive sign ordinance regulating the use of outdoor advertising within the city limits. A copy of the sign ordinance in effect when SIS filed its applications for permits ("the Ordinance") is annexed hereto as Exhibit "A".

12.    On or about September 3 and September 17, 1999, SIS submitted applications for 18 permits to construct outdoor advertising off-premise signs within the City.

13.    All such applications were rejected for the singular reason that the Ordinance prohibited off-premise signage.

14.    The Ordinance authorized permanent on-premise commercial signage identifying the premises where the sign structure was located and its main use.

15. The ordinance prohibited off premise non-commercial speech, with certain specified exceptions.

16. The Ordinance's preference for on-premise commercial speech over off-premise non-commercial speech violated the First and Fourteenth Amendments to the United States Constitution.

17.     The exemptions to the Ordinance's prohibition of off-premise non-commercial speech required examination of the content of non-commercial messages.  In most instances, whether non-commercial signs were exempted or prohibited turned on whether or not they conveyed messages approved by the Ordinance.

18. The City's choosing of some but not all non-commercial messages as appropriate on signage within the City violated the provisions of the First and Fourteenth Amendments to the United States Constitution.

19. The distinction drawn in the Ordinance between on-premise and off-premise commercial advertising bore no relationship to the City's asserted interests in traffic safety and maintaining an attractive appearance.

20. A sign presents the same impact on traffic safety or aesthetics whether it advertises on-premise or off-premise speech.

21. The Ordinance did not advance the City's asserted interests in enacting it.

22.     Less restrictive means than the means chosen by the City were available to the City to advance its interests in traffic safety and aesthetics, such as through limitation of all signage per lot, size or location without the need to address sign content.

23. The Ordinance in its treatment of commercial speech violated the First and Fourteenth Amendments to the United States Constitution because it reached further than necessary to accomplish its given objectives.

24. The Ordinance treated commercial signs more favorably than political signs.

25. While commercial signs could permanently advertise the owner and property, political signs were allowed only on a temporary basis, on behalf of candidates for public office

4

or signs urging the passage or defeat of any ballot measure, and were required to be removed within seven days after the date of the election to which they pertained.

26.     The Ordinance treated identical political signs in different ways depending wholly upon their content. For example, political signs concerning current campaigns were permitted, but political signage without reference to matters on a ballot were banned.

27.     The Ordinance discriminated against other forms of political speech. It permitted signs advertising a candidate or a ballot measure to be sixteen square feet, but restricted signage communicating information on matters of public policy to four square feet.

28.  In its treatment of political signage, the Ordinance violated the First and Fourteenth Amendments to the United States Constitution

29.  The Ordinance allowed inspectors to prohibit signs advertising matters of public policy if, without appropriate standards of guidance, they found that the signs contained matters which they deemed obscene, contained curse words or provided an appeal to prurient interests.

30.     The Ordinance violated the First and Fourteenth Amendments to the United States Constitution by granting those enforcing its provisions unbridled discretion in determining whether to authorize the Ordinance's exemption for signs advertising matters of public policy.

31.     For all of the reasons set forth above, at the time SIS submitted its applications for permits, the City's sign ordinance regulating applications for permits was unconstitutional in its entirety.

32. On or about Sept. 17, 1999, counsel for SIS informed the City Manager in a writing, annexed hereto as Exhibit "B", that the Deerfield Beach Sign Ordinance violated the provisions of the United States Constitution in its blanket prohibition of off-premise signs, and cited relevant caselaw to that effect in the United States Supreme Court and the Eleventh Circuit Court of Appeals.

33.    Thereafter, the City proposed to adopt, and did adopt an amendment to its sign ordinance, Ordinance No. 1999/028, to authorize non-commercial signage to be substituted for commercial signage wherever the latter was allowed.  A copy of such measure, Ordinance No. 1999/028, is annexed hereto as Exhibit "C".

34.    SIS complied with all lawful zoning requirements in effect when its applications were filed.  As a consequence, SIS had vested rights under Florida law to its permits, which could not be affected by the later passage of Ordinance 1999/028.

35.    SIS has no adequate remedy at law to secure relief from the Deerfield Beach sign Ordinance, as amended.

<u>Demand for Relief</u>

WHEREFORE, Street Information Systems, Inc. demands judgment against the City of Deerfield Beach as follows:

A.    Declaring that the sign ordinance in effect when SIS applied for permits was unconstitutional in its entirety;

B.    Preliminarily enjoining the City of Deerfield Beach from enforcing its sign ordinance, as amended by Ordinance 1999/028, against SIS;

      C.      Directing the City of Deerfield Beach to follow its usual and customary processes and ministerial duties in connection with the issuance of any lawful building or sign permits to SIS;

      D.      Granting such relief as may be just and proper; and

      E.      Awarding SIS its costs and disbursements in this action, including, but not limited to, reasonable attorney's fees.

January 31, 2000

Respectfully submitted,

Myron D. Cohen
Hunton & Williams
200 Park Avenue
New York, New York 10166
(202) 309-1000 (Telephone)
(202) 309-1100 (Facsimile)


and

Gary R. Rutledge
Fl. Bar No. 222674
Rutledge, Ecenia, Purnell & Hoffman, P.A.
215 South Monroe St., Suite 420
Tallahassee, Fl 32301
(850) 681-6788 (Telephone)
(850) 681-6515 (Facsimile)

Attorneys for Plaintiff,
STREET INFORMATION SYSTEMS, INC.

7

## Sec. 102-1. Purpose, intent, and scope.

It shall be the purpose of this ordinance to coordinate the type and placement of signs within the different land use zones; to recognize the commercial communication requirements of all sectors of the business community; to encourage the innovative use of design; to promote both renovation and proper maintenance; to allow for special circumstances; and to guarantee equal treatment under the law through accurate record keeping and consistent enforcement. These shall be accomplished by regulation of the posting, displaying, erection, use, and maintenance of signs. No sign shall be permitted as either a main or accessory use, except in accordance with the provisions of this ordinance. This sign code shall be deemed as part of the Land Development Code and enforced in the same manner as all other provisions therein.

This ordinance shall not relate to building design, nor shall the ordinance regulate official directional and traffic signs; the copy and message of signs; signs not intended to be viewed from a public right-of-way; window displays; point of purchase advertising displays such as candy machines and other product dispensers; national flags or the flags of any political subdivision; gravestones; barber poles; or historical site plaques.

Thus, the primary concern of this ordinance shall be to regulate signs of a commercial nature intended to be viewed from any public right-of-way, and to provide for the protection of the health, safety and property values and general welfare of the citizenry of Deerfield Beach, Florida.

It is further intended to create a more attractive economic and business climate, enhance and protect the physical appearance of the community, preserve the scenic and natural beauty of the city and provide a more enjoyable and pleasing community. Also, it is intended hereby to improve vehicular and pedestrian safety, provide more open space, curb the deterioration of natural beauty, community environment and reduce visual blight.

## Sec. 102-2. Definitions.

As used in this chapter:

(1) *Abandoned sign* means a sign is considered abandoned if a business advertised on that sign is no longer licensed, no longer has a certificate of occupancy or is no longer doing business on that location.

(2) *Frame sign* means a moveable sign not secured or attached to the ground as required by this ordinance. This shall include sandwich and sidewalk signs.

(3) *Animated sign* means a sign with action or motion using electrical energy, electronic or manufactured sources of supply, or wind actuated elements, including rotating, revolving or flashing signs.

(4) *Banner* means any sign having the characters, letters, illustrations, or ornamentations applied to cloth, paper, balloons, or fabric of any kind with only such materials for foundation. The word "banner" shall also include pennant or any animated, ro-



§ 102-2     DEERFIELD BEACH LAND DEVELOPMENT CODE

tating and/or fluttering device, with or without lettering for design, and manufactured and placed for the purpose of attracting attention.

(5) *Construction sign* means a temporary sign identifying those engaged in construction of any building site. This includes the builder, contractor, developer, architect, engineer, painter, plumber, or other persons or artisans concerned in said construction.

(6) *Development sign* means a temporary sign advertising the sale or rental of structures under construction upon land which is under development.

(7) *Directional sign* means a sign permanently erected or permitted by the city, county, or State of Florida to denote the name of any thoroughfare, the route to any city, town, village, educational institution, public building, historic place, shrine or hospital; to direct and regulate traffic; to denote any railroad crossing, bridge ferry, or other transportation company for the direction or safety of the public.

(8) *Double-faced sign* means a sign with two faces which are parallel to each other and back to back.

(9) *Entrance sign* means an identification structure located at the main entrance to a city approved subdivision or development the only advertising on the structure shall be the name of the subdivision or development.

(10) *Facade* means the entire building front, including parapet.

(11) *Flag* means a piece of fabric with a color or pattern that represents a country, state, county, or city.

(12) *Flashing sign*. The term "flashing sign" shall mean any sign, used for identification, directional, advertising, or promotional purposes, that includes approved lighting fixtures which flash, blink, cut on and off intermittently, and are used as exterior signs or interior signs visible from the public right-of-way.

(13) *Freestanding sign* means a sign which is supported by one or more columns, uprights, or braces in or upon the ground, independent of any building for support.

(14) *Identification sign* means a sign of not more than three square feet in area used to identify the name of the business located thereon and/or its principals and address. The top of said sign shall be no more than eight feet above ground level.

(15) *Marquee* means a permanent structure other than a roof attached to, supported by, and projecting from a building and providing protection from the elements. For the purposes of this ordinance, a freestanding, permanent, roof-like structure providing protection from the elements, such as a service station gas pump island, will also be considered a marquee (also includes "canopy").

(16) *Nonconforming sign* means any sign that does not conform to the provisions of this ordinance.

(17) *Off-premise sign* means an advertising structure, including a building, for any sign advertising an establishment, merchandise service, or entertainment which is sold,

produced, manufactured, and/or furnished at a place other than on the property on which said sign is located (commonly called "billboards").

(18) *Parapet* means a false front or wall extending above the roof line.

(19) *Perimeter* means geometric shape required to enclose sign area.

(20) *Person* shall include individuals, partnerships, associations, and corporations.

(21) *Political sign* means any temporary advertising structure used in connection with a local, county, state, or national election campaign.

(22) *Premises* means the real estate (as a unit) which is involved by the sign or signs mentioned in this section.

(23). *Principal street frontage.* The principal street shall be the public vehicular street that said sign fronts upon. If the business establishment fronts upon more than one street, the sign applicant may choose two street frontage measurements for sign area to be based upon; however, *no more than two street frontages may be used.*

(24) *Real estate sign* means a temporary sign erected by the owner, or his agent, advertising the real estate upon which the sign is located as being for rent, lease, or sale.

(25) *Roof sign* means any outdoor advertising display sign, installed, constructed or maintained on or above the roof of any building.

(26) *Sign* means any device, structure, or fixture using graphics, symbols, and/or written copy for the primary purpose of identifying or advertising any establishment, product goods or services. For the purpose of this ordinance, the definition shall refer to the area upon which the advertising message is displayed and shall not include architectural embellishments, poles, pole covers, or any structure or portion of a building supporting the sign.

(27) *Sign, area of:*

a.  Projecting and freestanding means the area of a freestanding or projecting sign shall have any one face (the largest one) of any double-faced sign counted in calculating its area. The area of the sign shall be measured as follows, if the sign is composed of one or two individual cabinets:

1.  The area around and enclosing the perimeter of each cabinet or module shall be summed and then totaled to determine total area. The perimeter of measurable area shall not include architectural embellishments such as pole covers, framing, decorative roofing, etc., provided that there is not written advertising copy on such architectural embellishments.

2.  If the sign is composed of more than two sign cabinets or modules, the area enclosing the entire perimeter of all cabinets and/or modules within a single continuous geometric figure shall be the area of the sign. Pole covers and other embellishments shall not be included in the area of sign measurements if the pole cover, etc. does not have written advertising copy.

    b.  Wall or flat, illuminated or nonilluminated, whether painted, plastic, wood, etc. on a flat sign (wall sign) that is painted directly on the wall, within one cabinet structure, or a marquee sign, the area shall be within a single, continuous perimeter composed of any straight line geometric figure(s) which enclosed the extreme limits of the advertising message. If the sign is composed of individual letters or symbols using the wall as the background with no added decoration, the total sign area shall be calculated by measuring the area within the perimeter of each symbol or letter. The combined areas of the individual figures shall be considered the total sign area.

(28) *Time and temperature sign* means a display containing illuminated numerals flashing alternately to show the time and/or temperature.

(29) *Wall sign* means a sign erected parallel to and extending not more than 18 inches from the facade of any building. This definition includes signs on a canopy or marquee parallel to a building face or wall. A sign on a mansard roof must conform to wall sign provisions and cannot extend over the roof line (includes painted, individual letter, and cabinet signs).

(30) *Vehicular advertising sign* means a sign affixed to or painted on a transportation vehicle or trailer, for the purpose of business advertising.

(31) *Vehicular identification sign* means a sign affixed to or painted on a transportation vehicle or trailer for the purpose of identification as required by law.

(32) *Window sign* means any sign installed or maintained in the window of any building.

## Sec. 102-3. General provisions.

(a) Unless specified otherwise by this chapter, at any business establishment there shall be no more than two signs. This does not include informational, directional or parking signs, or small window signs (occupying less than 25 percent of the window space). Business establishments with frontage on more than one street will be allowed one additional sign on the extra frontage limited in size to 75 percent of that of the establishment's largest sign.

(b) When one and only one sign is used on the main frontage, the area of that sign may be increased by as much as 25 percent of the maximum area normally permitted for that type of sign according to this chapter.

(c) When a projecting sign is used, no angle irons, guy wires, or braces shall be visible from where the sign is normally viewed.

(d) No person shall erect or maintain any electric sign or similar device that interferes with the visibility of any official traffic-control or warning signal.

(e) High-rise signs not exceeding 100 square feet in area and 50 feet in height are permitted provided that special use permits are obtained with the approval of the city commission and also provided that they are located within one-quarter mile of an exit from a freeway or highway with a 55 m.p.h. speed limit.

SIGNS                                                           § 102-5

(f) With each sign permit issued, it shall be the duty of the permittee or his/her agent to permanently label each sign or advertising structure in the lower right hand area, indicating the date of issuance of the permit, the name of the permittee, and the permit number. The requirement label must be clearly and permanently marked so that it can be easily seen. The absence of a proper label on a sign or advertising structure shall be prima facie evidence that the same has been, or is being, erected or operated in violation of the provisions of this chapter. This subsection shall apply only to signs the construction of which began after June 25, 1979.

(g) Any sign which presents a life safety hazard or encroaches upon a public right-of-way may be removed without notice.

## Sec. 102-4. Occupational license.

(a) Except as provided herein, it shall be unlawful for any person or firm to post, display, repair, change, paint, or erect any sign or sign structure without having first obtained a license therefore in compliance with the South Florida Building Code and the License Division of the City of Deerfield Beach. However, this subsection shall not apply where such work is done by the owner himself and not by a contracted agent. For the purposes of this article, license shall always be associated with the person(s) erecting a sign, and permit shall always refer to sign(s).

## Sec. 102-5. Permits.

(a) Except as provided herein, it shall be unlawful for any person or business or the person in charge of the business to:

(1) Post, display, repair, change, paint, erect, attach or place or,

(2) Cause to be posted, displayed, repaired, changed, painted, erected, attached or placed, or

(3) Permit or suffer to be posted, displayed, repaired, changed, painted, erected, attached or placed, or

(4) Permit or suffer to continue to be erected, posted, displayed, repaired, changed, painted, attached or placed, any sign or sign structure without first obtaining a permit from the chief building inspector in accordance with provisions of Chapter 42 of the South Florida Building Code. Fees shall be paid in accordance with Deerfield Beach fee schedules. In addition, a sign permit shall be filed in the code enforcement division.

(b) The following inspections by the inspector shall be required before permits are final:

(1) On freestanding signs over 24 square feet in area, an inspection is required prior to the pouring of concrete;

(2) Final inspection on all signs that require a permit;

(3) Final electrical inspections on all signs requiring an electrical permit;

(4) On certain signs that are inaccessible for inspection because of height or location, the inspector may require either a shop inspection or an on-site inspection of the sign

prior to the installation of such sign. Such conditions shall be so stated on the permit when it is issued;

(5) If a violation of this chapter or the South Florida Building Code exists, the inspector may require an additional inspection.

(c) It shall not be necessary to obtain a permit for the following

(1) Signs erected or required by governmental bodies;

(2) Address signs;

(3) Identification sign (section 102-2(14));

(4) Temporary construction sign not to exceed 16 square feet (section 102-2);

(5) General maintenance and repainting of original copy;

(6) Political signs (section 102-7(e));

(7) Temporary real estate sign not to exceed six square feet (section 102-2(24));

(8) Window signs;

(9) Development sign (section 102-2(6));

(10) Flags (section 102-2(11));

(11) Directional sign (section 102-2 (7)).

## Sec. 102-6. Certain sign or sign structures prohibited.

From and after the effective date of this ordinance it shall be unlawful for any person or business, or the person in charge of the business, to (i) erect, attach or place, or (ii) cause to be erected, attached or placed, or (iii) permit or suffer to be erected, attached or placed, or (iv) permit or suffer to continue to be as erected, attached, or placed within the City of Deerfield Beach, Florida:

(1) A swinging projecting sign;

(2) A banner including festoons or lights and/or decorations;

(3) Off-premise signs;

(4) Any sign containing intermittent flashing or animation except time and temperature;

(5) A sign or signs attached to, erected on, or placed on a vehicle or trailer. This provision is not to be construed as prohibiting the identification of a firm or its principal products by a sign, which otherwise complies with the applicable laws and ordinances on a vehicle operating as a pickup and/or delivery vehicle during the normal course of business. Franchised buses or taxis are exempt from this provision;

(6) Electrical and illuminated signs in single-family and two-family dwelling districts;

(7) The placing on sidewalks or on private property of benches bearing advertising matter, other than those authorized by the city commission. However, signs advertising the public transit authorities may be placed on benches at bus stops;

(8) Three-dimensional product representation displays, except as provided herein;

(9) Waste receptacles carrying advertising matter and placed on a public right-of-way or private property, other than those authorized by the City Commission.

(10) Any sign which constitutes a traffic hazard or detriment to traffic safety by reason of its size, location, movement, content, coloring, or method of illumination, or by obstructing the vision of drivers, or by obstructing or detracting from the visibility of the official traffic-control device by diverting or tending to divert the attention of drivers of moving vehicles from traffic movements on streets, roads, intersections or access facilities. No sign shall be erected so that it obstructs the vision of pedestrians. Flashing or revolving red, green, blue, or amber lights shall be prohibited on any sign. No sign may use the words "stop", "slow", "drive-in", "danger", or any other word, phrase, symbol, or character in such a manner as to interfere with, mislead, or confuse traffic;

(11) Signs not properly maintained, showing neglect, abandonment, or in such dilapidated or hazardous condition as to violate the purpose, intent and objectives of this ordinance, based on the South Florida Building Code;

(12) Any sign erected on top or above a roof;

(13) Signs or flags attached to telephone poles, fences, etc.; or signs affixed to street lights;

(14) Any sign that revolves;

(15) Any portable sign;

(16) Any sign or sign structure which does not comply with the terms, conditions, and provisions contained in this ordinance, and any sign or sign structure disapproved by the city commission or any of its boards or departments as part of the development plan approval process, or any sign which exceeds 60 percent of the required setback for the zoning district in which it is located.

(17) Any for sale sign indicating the sale of a vehicle, trailer or boat unless said sign is at a location specifically authorized to sell such vehicle, trailer or boat and has a duly issued occupational license from the city for such sale. These provisions shall not apply to any two signs not larger than one foot by one foot when located on a vehicle, trailer or boat parked on residentially zoned property whereon the owner or tenant of such property is attempting to sell his or her own vehicle, trailer or boat, nor when such owner is driving or using such vehicle, trailer or boat in his or her normal daily activities.

(18) In any commercially zoned district, the owner or leasee of a retail establishment may display no more than three flags, provided said flags are displayed on a single flag pole sufficiently proportionate to the size of the flag, which flag pole is permanently

secured to the ground and provided said pole is not part of the building in which a commercial establishment is located. Any such pole must be part of an approved site plan or modification thereof. No more than three flags may be displayed on any one flag pole. Only one flag pole is permitted per commercial establishment. In buildings with several commercial establishments flags may be displayed on no more than two separate flag poles subject to the limitations set forth herein. Further, no more than two flag poles shall be placed on any lot of record or parcel of record (as that term is defined in the Broward County Land Use Plan) in a commercially zoned district. Any pole upon which a flag is to be displayed must be part of a site plan or modification thereof; such a modification may be approved by the city commission without the necessity of review by the planning and zoning board, but only after review by the City of Deerfield Beach Development Review Committee pursuant to review procedures established by the director of planning, but said pole must meet all requirements of the Land Development Code with regard to setbacks and any other requirements for structures as set forth in the Land Development Code. The distance from the top to the bottom of any flag shall be 20 percent of the total height of the flag pole. Flag poles previously approved by the city as part of a site plan may remain as previously approved, but may not be altered except in compliance with this section and shall be limited to three flags per pole.

(Ord. No. 1996/001, § 1, 1-23-96; Ord. No. 1996/007, §§ 2, 3, 5-7-96)

**Sec. 102-7. Signs permitted and regulated.**

(a) *One and two-family dwelling districts (R-1 and R-2).*

(1) In single-family and two-family dwelling districts, only one (1) temporary nonilluminated real estate sign (erected either by owner or agent) of not over six square feet per sign face per main building.

(2) One temporary removable sign of not over five square feet in area, with the word "open" may be used when attached to an existing real estate sign; or where a real estate sign is not installed on the property. No permit or permit fee is necessary for such temporary removable signs.

(3) One name-plate sign situated on the premises and bearing only the name of the principal occupant or occupants and/or the street number of a private dwelling.

(4) A temporary building sign as provided by section 102-2(5) not exceeding 16 square feet.

(b) *Multiple-family residential and trailer district.*

(1) Only one owner identification signs are permitted.

(2) One nonilluminated real estate sign (erected either by the owner or his/her agent) of not over 16 square feet per each street frontage.

(3) One principal main use sign and one additional accessory use sign per street frontage as follows:

    a.  The main use and one accessory use of the premises may be advertised on one flat sign not exceeding 40 square feet;

    b.  The main use and one accessory use of the premises may be advertised on one ground or pole sign placed in the required front yard. Such sign shall not exceed 32 square feet;

    c.  All signs attached to the ground and any signs which are enclosed in any manner from ground to top of sign, shall be set back 25 feet from all right-of-way intersections;

    d.  On plots containing permitted nonresidential structures or uses, other than accessory, one nonilluminated sign, not exceeding an area of 48 square feet shall be allowed. It shall not be closer than five feet to the front property line, nor be closer than ten feet to any residential property line.

(c) *All other zoning districts*

(1) General:

    a.  All requirements of section 102-3, General Provisions, shall apply.

    b.  Each main building shall be allowed one pole or ground sign per street frontage not to exceed 40 square feet in size or 20 feet in height to the top of the sign.

    c.  Signs may be illuminated except where specifically prohibited.

(2) Additional signs permitted:

    a.  Directional signs giving directions to motorists regarding the location of parking areas, access drives, and accessways shall not exceed eight square feet per sign and shall meet the locational requirements of the off-street parking ordinance, as amended, if appropriate.

    b.  Real estate signs shall not exceed one for each street frontage. Such signs shall not exceed 32 square feet per sign face and shall not be illuminated.

    c.  One pole sign or freestanding sign for each building on a separate lot is permitted. Such sign shall not exceed 25 feet in height nor exceed an area equal to 40 square feet.

    d.  On a business with total frontage on the main street of more than 300 feet, the building shall be allowed an additional pole or ground sign for each 300 feet of frontage. Signs shall be placed at least 150 feet apart.

    e.  Wall signs (painted or other) shall be calculated by one square foot for each one foot of business establishment frontage up to a maximum of 100 square feet. No sign shall be required to be less than 32 square feet.

    f.  Projecting signs are permitted in lieu of a freestanding sign. The area is not to exceed 50 percent of that allowable for a freestanding sign. Such sign shall not be less than nine feet above the grade of the closest sidewalk and not more than six feet beyond the wall of the building to which it is attached.

        Such sign shall not extend above the parapet or facade of the building to which it is attached, and shall be located 18 inches inside the curb and shall also be located on the wall of the business which it identifies, facing the principal street.

    g.  Temporary signs, banner signs, portable signs, decorations, festoons of lights and/or decorations may be erected for a recognized city holiday. A permit shall be required as specified in section 102-5.

(d) *Signs in shop windows, display windows, doors or other windows.*

(1) Temporary signs may be attached to or displayed within glass display windows of commercial establishments and stores, without a permit; provided, however, that such signs shall be permitted within or upon any one display window, and provided further that such signs shall not cover more than 25 percent of the window space and shall be placed so that the interior of the establishment remains visible from the outside.

(2) Credit card (monetary, institutional, etc.) signs, decals, or emblems shall also be allowed, but shall be limited to 24 square inches or an aggregate of 96 square inches per business premise.

(e) *Political signs.* Political signs may be placed on private property in any district with permission of the owner, with the following regulations, without a permit:

(1) A maximum of 16 square feet per sign face.

§ 102-7                    DEERFIELD BEACH LAND DEVELOPMENT CODE

(2)  Director of community development may call for proof of property owner's permission at any time for signs placed on vacant land.

(3)  No poster or snipe signs attached to trees or utility or similar poles shall be permitted.

(4)  No signs in public rights-of-way or any public property shall be permitted.

(5)  No political signs may be allowed to remain more than five days following an election.

(6)  All signs not conforming to the above requirements shall be subject to the general requirements of this article.

(f) *Public or private parking lots.* Signs may be erected upon off-street parking lots which are operated in connection with stores or other places of business. Parking signs containing advertising copy or reference to a business shall be limited to one sign per entrance with a maximum size of 12 square feet. Prior to the erection of such signs, the operator of the business shall make a written application, including a sketch, in duplicate, of any proposed sign.

(g) *Removal of certain signs.*

(1)  Any abandoned sign or sign structure shall be taken down and removed by the owner, agent, or person having beneficial use of the building, structure, or land upon which such sign shall be found, within 30 days of abandonment.

(2)  It shall be unlawful for a person to use or maintain a sign heretofore erected, when such does not comply with the requirements of this article, except those signs designated as nonconforming. Signs erected without a permit shall be removed upon notification of the director of community development.

(h) *Nonconforming signs.*

(1)  All nonconforming signs or advertising structures within the City limits shall be removed if it becomes necessary to replace or rebuild to the extent of 50 percent of the original cost of said sign, in which case they shall be discontinued immediately. Proof of sign cost, original and replacement or rebuilding, must be supplied by the owner.

(2)  Conforming, nonconforming signs prohibited on same lot. No conforming sign or sign structure shall be erected on the same plot with an existing nonconforming sign until the nonconforming sign has been removed or made conforming, provided that paragraph (h)(1) of this section takes precedence over and controls paragraph (h)(2) on any multi-business lot.

(i) *Flags.*

(1)  Flags containing the corporate logo commonly used to identify the business upon which such flag is located in commercial or industrially zoned districts in the city. The flag must be on a flag pole. Such pole when attached to a building shall be no greater than eight feet in length. The flag portion must be attached to the pole on only one side of the flag and the flag may not be greater than 16 square feet. The flag may not contain any advertisement or promotional information. The logo may not contain print other than that which states the name of the business provided the name of the

business is a standard part of the logo. The flag and pole must be located on the building in which the business in question is conducted.

## Sec. 102-8. Administration.

(a) *Code administrator.* The administrator shall be the director of community development or a representative designated by the director. The administrator is hereby authorized to process applications for permits and variances, provide for the holding of public hearings as required and enforce and carry out all provisions of this Code, both in letter and in spirit. The administrator is authorized to promulgate regulations and procedures consistent with the purpose of this Code toward this end.

(b) *Inspection.* The administrator or his designee is empowered, upon presentation of proper credentials, to enter or inspect any building, structure, or premises in the city upon which, or in connection with which, a sign is located for the purposes of inspection of the sign, its structural and electrical connections, and to ensure compliance with all applicable codes and ordinances. Such inspections shall be carried out during business hours unless an emergency exists.

(c) *Appeals.* Any person who believes that a decision rendered by the administrator in denying a permit is incorrect may appeal that decision to the city commission for a fee of $50.00. Application for the appeal may be obtained in the office of the administrator or his designee.

(d) *Variances.* Any person who believes that the strict application of the sign code imposes an improper hardship upon him or who wishes to seek a civic event variance, may seek such variance from the city commission for a fee to be established by separate resolution. Applications for variances may be obtained in the office of the administrator.

(1) *Hardship variances.* The city commission may grant a hardship variance from the provisions and requirements of this Code only where:

    a.   The literal interpretation and strict application of the provisions and requirements of the Code would not allow the property to be used at its highest and best use as zoned; and

    b.   The literal interpretation and strict application of the provisions and requirements of the Code would cause undue and unnecessary hardship to the sign user because of unique or unusual conditions pertaining to the specific building or parcel or property in question; and

    c.   The granting of the requested variance would not be materially detrimental to property owners in the vicinity; and

    d.   The unusual conditions applying to the specific property do not apply generally to other properties in the city; and

    e.   The granting of the variance will not be contrary to the general intent of this Code to moderate the size, number, and obtrusive placement of signs and to reduce clutter.

        When there is insufficient evidence, in the opinion of the city commission, to support a finding of "undue and unnecessary hardship" under paragraph (d)(1)b.

above, but some hardship does exist, the city commission may consider the requirement fulfilled if the petition has met three out of the five criteria listed above. In granting a variance the city commission may attach thereto such conditions regarding the location, character, and other features of the proposed sign as it may deem necessary to carry out the spirit and purpose of this Code in the public interest.

(2) *Temporary civic event sign variance.* The city commission may grant a variance for temporary signs advertising a city-wide, civic, cultural or charitable event, which event is open to all citizens and which civic, cultural or charitable event is sponsored by a Deerfield Beach nonprofit organization for the benefit of all citizens when the city commission believes the granting of such variance will be in the best interest of the citizens of the City of Deerfield Beach. Such variance shall be granted only for the minimum number of signs, at specifically designated locations, for the shortest period of time, the city commission believes is necessary to advertise the event.

## Sec. 102-9. Interpretation of application for permits.

In all applications for permits, where a matter of interpretation arises, the most rigid definition shall prevail.

## Sec. 102-10. Severability clause.

If any section, subsection, sentence, clause, phrase, or portion of this ordinance is for any reason held invalid or unconstitutional by any court of competent jurisdiction, such portion shall be deemed a separate, distinct, and independent provision, and such holding shall not affect the validity of the remaining portions thereof.

## Sec. 102-11. Conflicts repealed.

That all sections or parts of sections of the Code of Municipal Ordinances, all ordinances or parts of ordinances, and all resolutions, in conflict herewith, by and the same, are hereby repealed to the extent of such conflict.

## Sec. 102-12. Violations and enforcement.

(a) *Violations.* The violation or failure to comply with any of the provisions of, or the doing of any act stated to be unlawful in, Chapter 4 of Title V of the Deerfield Beach City Code herein "sign code" shall be and hereby is declared to be unlawful and a violation of this sign code. Each and every day that a violation continues shall be considered a separate and specific violation.

(b) *Enforcement.* The City of Deerfield Beach Code Enforcement Board shall have the jurisdiction and authority to hear and decide alleged violations of the sign code, which alleged violations shall be processed in accordance with the provisions of Article VI of Chapter 2 of the Deerfield Beach City Code.

## Sec. 102-13. Effective date.

This chapter shall take effect immediately after its final passage by the city commission.

# RUTLEDGE, ECENIA, PURNELL & HOFFMAN

PROFESSIONAL ASSOCIATION
ATTORNEYS AND COUNSELORS AT LAW

STEPHEN A. ECENIA
JOHN R. ELLIS
KENNETH A. HOFFMAN
THOMAS W. KONRAD
MICHAEL G. MAIDA
J. STEPHEN MENTON
R. DAVID PRESCOTT
HAROLD F. X. PURNELL
GARY R. RUTLEDGE

POST OFFICE BOX 551, 32302-0551
215 SOUTH MONROE STREET, SUITE 420
TALLAHASSEE, FLORIDA 32301-1841

—————

TELEPHONE (850) 681-6788
TELECOPIER (850) 681-6515

OF COUNSEL:
CHARLES F. DUDLEY

GOVERNMENTAL CONSULTANTS:
PATRICK R. MALOY
AMY J. YOUNG

September 17, 1999

Mr. Larry Deetjem
City Manager
City of Deerfield Beach
150 N.E. 2nd Avenue
Deerfield Beach, Florida 33441-3498

RE:  Off-premise Sign Permit Applications for the Following:

Filed September 3, 1999                    Filed September 17, 1999

Property I.D. Number 484202000237      Property I.D. Number 484210120010
Property I.D. Number 484201060070      Property I.D. Number 484211070293
Property I.D. Number 484203010250      Property I.D. Number 484306060220
Property I.D. Number 484306200010      Property I.D. Number 484201040661
Property I.D. Number 474236110080
Property I.D. Number 484306390060
Property I.D. Number 484201050200
Property I.D. Number 484305080130
Property I.D. Number 484306001110
Property I.D. Number 484209020010
Property I.D. Number 484201170010
Property I.D. Number 484201140010
Property I.D. Number 484210020240
Property I.D. Number 484306000060

Dear Mr. Deetjem:

        This firm represents Street Information Systems, Inc. a professional sign company.  Daniel
Hardin of Street Information Systems, Inc., utilizing Wetherington Builders, filed 14 applications
for sign permits for locations within the City of Deerfield Beach on September 3, 1999 and four such



EXHIBIT
B

Mr. Larry Deetjem
September 17, 1999
Page 2

applications on September 17, 1999. It is the apparent position of the City that off-premise signs are prohibited under the Deerfield Beach sign code and therefore, these applications must be denied.

In a series of cases, including *National Advertising v. City of Fort Lauderdale*, 934 F.2d 283 (11th Cir. 1991) and its successor case in 1993, the federal court found the City of Fort Lauderdale's sign ordinance to be unconstitutional in its entirety. The basis of the federal court's holding of unconstitutionality was that the sign ordinance impermissibly differentiated between commercial and non-commercial speech.

Like the City of Fort Lauderdale ordinance, the Deerfield Beach ordinance basically authorizes only point of sale signs. It therefore suffers from the same invalidity for unconstitutionally differentiating between commercial and non-commercial speech. The City can make no credible showing that a total ban on off-premises commercial advertising will, to a material and direct degree, advance the purported interest in safety and aesthetics. See *44 Liquor Mart, Inc. v. Rhode Island*, 517 U.S. 484, 116 S. Ct. 1495, 1507, 134, L.Ed. 2d 711 (1996), *City of Cincinnati v. Discovery Network*, 507 U.S. 410, 113 S. Ct. 1505, 123 L.Ed. 2d 99 (1993), and *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487, 115 S. Ct. 1585, 1592, 31 L.Ed. 2d 532 (1995).

In light of the foregoing, we would appreciate the opportunity of meeting with you and with the City Attorney to further discuss this matter. We also further request that any action relative to these sign permit applications be held in abeyance pending such meeting or in the alternative, that this letter be considered a request for review of the City's decision.

Thank you for your attention to this matter.

Sincerely,

Gary R. Rutledge

GRR:sp

F:\USER\SYLVIA\HARDIN\Deetjem.910



ORDINANCE
Introduced SHADDON

YEA NAY
Commissioner Clarke-Reed ☑ ☐
Commissioner Shaddow ☑ ☐
Commissioner Trinchitella ☑ ☐
Vice Mayor Noland ☐ ☐
Mayor Capellini ☑ ☐

NOLAND ABSENT

ORDINANCE NO. 1999/028

~~AN ORDINANCE OF THE CITY OF DEERFIELD BEACH,~~
FLORIDA AMENDING THE LAND DEVELOPMENT CODE OF
THE CITY OF DEERFIELD BEACH RELATED TO SIGNS;
REPEALING THE EXISTING SUB-SECTION 102-4 OF THE
LAND DEVELOPMENT CODE RELATING TO THE
REQUIREMENT FOR AN OCCUPATIONAL LICENSE AND
CREATING A NEW SUB-SECTION 102-4 TO PERMIT EITHER
A COMMERCIAL OR NON-COMMERCIAL MESSAGE ON ANY
SIGN; CONTAINING A PROVISION FOR INCLUSION IN THE
CITY CODE; CONTAINING A SEVERABILITY CLAUSE; AND
CONTAINING AN EFFECTIVE DATE.

**WHEREAS,** the City Commission of the City of Deerfield Beach, Florida, as part of its review of all land development regulations, wishes to amend its sign ordinance;

**NOW THEREFORE,** be it ordained by the City Commission of the City of Deerfield Beach, Florida as follows:

**SECTION 1.** The existing Sub-Section 102-4 of the Deerfield Beach Land Development Code is repealed, as indicated below in the ~~struck-through~~ language, and shall be replaced by a new Section 102-4 as appears below in the underlined language:

~~Sec. 102-4 Occupational license.~~

~~Except as provided herein, it shall be unlawful for any person or firm to post, display, repair, change, paint, or erect any sign or sign structure without having first obtained an occupational license therefor in compliance with the South Florida Building Code and the license division of the City of Deerfield Beach. For the purposes of this article, license shall always be associated with the person(s) erecting a sign, and permit shall always refer to sign(s).~~
~~(Ord. No. 1998/036; 1-5-99)~~

**Sec. 102-4 Changing face of sign from commercial to non-commercial message.**

Notwithstanding anything contained herein to the contrary, any sign erected pursuant to the provisions of this code may, at the option of the applicant, contain either a non-commercial message unrelated to the business located on the premises where the sign is erected or a commercial message. The non-commercial message may occupy the entire sign face or portion thereof. The sign face may be changed from commercial to non-commercial messages as frequently as desired by the owner of the sign, provided that the size and design criteria contained in Section 102 have been satisfied.



EXHIBIT
C

**SECTION 2.** Sub-Section 102-4 of the Land Development Code is hereby repealed in its entirety.

**SECTION 3.** **EFFECTIVE DATE.** This Ordinance shall take effect immediately upon its passage.

**PASSED 1ST READING ON THIS** __2__ **DAY OF** November , **1999**

**PASSED 2ND READING ON THIS** 16 **DAY OF** November , **1999**

**CITY OF DEERFIELD BEACH, FLORIDA**

(SEAL)

By: _____

ALBERT R. CAPELLINI, P.E., MAYOR

ATTEST:

FELICIA M. BRAVO, CITY CLERK

Deerfield/Code/Repeal

-2-

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

STREET INFORMATION SYSTEMS, INC.

**DEFENDANTS**

CITY OF DEERFIELD BEACH

00-6169

F B Y
OS FEB -2 AM 11: 26
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUDO

CIV-UNGARO-BENAGES

MAGISTRATE JUDGE
BROWN

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Broward
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Broward
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Myron D. Cohen
Cary R. Rutledge     Hunton & Williams
Rutledge, Ecenia et al.  200 Park Ave.
215 S. Monroe St. Ste 420  New York, NY  10166
Tallahssee, FL  32301  (850) 681-6788

ATTORNEYS (IF KNOWN)

Andrew S. Maurodis
City Attorney
150 N.E. Second Ave.
Deerfield Beach, FL  33441-3598

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE

DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Federal question: constitutionality of municipal ordinance restricting speech.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE /PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R.R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☒ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Other | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**

Check YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

None

JUDGE_____  DOCKET NUMBER_____

DATE  1·31·00

SIGNATURE OF ATTORNEY OF RECORD
Myron D. Cohen

5184 MI— $150.00
02-02-00

**UNITED STATES DISTRICT COURT**